UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

---------------------------------------------------------x
MARY MOTON and ASHLEY HANCOCK, : Case No.: 4:20-cv-1182
on behalf of themselves and others similarly :
situated, : Class Action
:
                 Plaintiffs, : Jury Trial Demanded
:
vs. :
:
COMENITY BANK, :
:
                 Defendant. :
---------------------------------------------------------x

**Nature of the Action**

1. Mary Moton and Ashley Hancock (collectively, "Plaintiffs") bring this class action against Comenity Bank ("Comenity") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*\*\*\*\*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

3. Upon information and belief, Comenity routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by placing non-emergency telephone calls to consumers' cellular telephone

1

numbers by using an automatic telephone dialing system ("ATDS") without the prior express consent of the consumers, in that Comenity repeatedly places calls to wrong or reassigned cellular telephone numbers that do not belong to the intended recipients of the calls. *Accord Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020) ("The principal question in this case is whether Credit One can escape liability under the TCPA because the party it intended to call (its customer) had given consent to be called, even though the party it actually called had not. Consistent with every circuit to have addressed this issue, we hold that this argument fails under the TCPA's text, most naturally read.").

## Jurisdiction

4. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where Comenity transacts business in this District, where Comenity directed certain of the telephone calls at issue to Ms. Moton in this District, and where Ms. Moton received telephone calls from Comenity to her cellular telephone in this District.

## Parties

6. Ms. Moton is a natural person who at all relevant times resided in St. Louis, Missouri.

7. Ms. Hancock is a natural person who at all relevant times resided in Fayetteville, North Carolina.

8. Comenity is a Delaware State FDIC-insured bank and a limited-purpose credit card bank. Comenity partners with some of the world's most recognized merchants, providing more than 145 branded credit programs, including private label, co-brand and commercial credit cards, such as Kay Jewelers.

**Factual Allegations**

A. **Comenity's calls to Ms. Moton's cellular telephone number**

9. In April 2020, after having not had a cellular telephone in many years, Ms. Moton obtained a new cellular telephone number through T-Mobile.

10. T-Mobile selected and assigned telephone number (314) XXX-9323 to Ms. Moton.

11. Ms. Moton was the regular and sole user of her cellular telephone number.

12. Shortly after activating her cellular telephone number, Ms. Moton began receiving a host of unwanted robocalls and text messages.

13. These unwanted robocalls included calls from Comenity.

14. To that end, Comenity placed multiple calls to Ms. Moton's cellular telephone number from telephone number (720) 728-3202, including on April 18, 2020.

15. When dialed, telephone number (720) 728-3202 delivers a prerecorded message that states: "Thank you for calling Comenity . . ."

16. Comenity also placed at least one call to Ms. Moton's cellular telephone number from telephone number (303) 242-3253, including on April 20, 2020.

17. When dialed, telephone number (303) 242-3253 delivers a prerecorded message that states: "Thank you for calling Comenity . . ."

18. Upon information and good faith belief, Comenity maintains business records that show all calls it placed to Ms. Moton's cellular telephone number.

19. The incessant, unwanted robocalls to Ms. Moton's cellular telephone became so annoying and irritating that after two weeks Ms. Moton canceled her new telephone number.

20. Ms. Moton is not, nor was, one of Comenity's customers or accountholders.

21. Ms. Moton does not, nor did, have any Comenity-branded credit cards.

22. Ms. Moton does not, nor did, have any business relationship with Comenity.

23. Ms. Moton did not provide her cellular telephone number to Comenity.

24. Ms. Moton did not give Comenity prior express consent to place calls to her cellular telephone number by using an ATDS, or an artificial or prerecorded voice.

25. Upon information and good faith belief, Comenity placed its calls to Ms. Moton's cellular telephone number in an effort to reach a third party about a Comenity account.

26. Ms. Moton does not know the third party that Comenity attempted to reach.

27. Ms. Moton suffered actual harm as a result Comenity's calls in that she suffered an invasion of privacy, an intrusion into her life, a private nuisance, and ultimately cancelled her cellular telephone number.

**B. Comenity's calls to Ms. Hancock's cellular telephone number**

28. Beginning in or around 2018 and continuing through 2020, Comenity placed a host of calls to Ms. Hancock's cellular telephone number—(814) XXX-1410.

29. Ms. Hancock is the regular and sole user of her cellular telephone number.

30. To that end, Comenity placed multiple calls to Ms. Hancock's cellular telephone number from telephone number (614) 754-4060, including on February 20, 2020 and February 24, 2020.

31. When dialed, telephone number (614) 754-4060 delivers a prerecorded message that states: "Thank you for calling Comenity . . ."

32. Upon information and good faith belief, Comenity maintains business records that show all calls it placed to Ms. Hancock's cellular telephone number.

33. Comenity also left several voice messages on Ms. Hancock's cellular telephone voice mail.

34. At least one of the voice messages Comenity left on Ms. Hancock's cellular telephone voice mail referenced a Kay Jewelers account for a person named "Gilissa."

35. Ms. Hancock answered several of Comenity's calls and on multiple occasions informed Comenity that it was calling the wrong number.

36. Despite informing Comenity that it was calling the wrong number, Comenity continued placing calls to Ms. Hancock's cellular telephone number.

37. Ms. Hancock is not, nor was, one of Comenity's customers or accountholders.

38. Ms. Hancock does not, nor did, have any Comenity-branded credit cards.

39. Ms. Hancock does not, nor did, have any business relationship with Comenity.

40. Ms. Hancock did not provide her cellular telephone number to Comenity.

41. Ms. Hancock did not give Comenity prior express consent to place calls to her cellular telephone number by using an ATDS, or an artificial or prerecorded voice.

42. Comenity placed its calls to Ms. Hancock's cellular telephone number in an effort to reach a third party about a Comenity account.

43. Ms. Hancock does not know "Gilissa," the person Comenity attempted to reach.

44. Ms. Hancock suffered actual harm as a result Comenity's calls in that she suffered an invasion of privacy, an intrusion into her life, a private nuisance, and was forced to spend time fielding Comenity's calls and trying to get the calls to stop.

### C. Allegations common to Plaintiffs

45. The Kay Jewelers credit agreement states, in pertinent part:

> You further agree that all of our contacts with you are not unsolicited, and may be made with an automated dialing and announcing or similar device and/or an artificial voice or prerecorded message, in accordance with applicable law. You also agree that we contact you at any telephone number you provide to us, whether a residential number or a wireless, cellular or mobile number.

46. Other Comenity-backed credit agreements also require accountholders to consent to receiving robocalls.

47. For example, among the terms and conditions of Comenity's Pottery Barn credit card are:

> Subject to any restrictions of applicable law, we may contact you using automated telephone dialing systems and/or ore-recorded or artificial voice messages and any other form of communication.[1]

48. Moreover, by applying for a Comenity-backed Pottery Barn credit card, consumers agree:

> By providing your contact information, including any mobile or other phone numbers, you agree to be contacted regarding any of your Comenity Bank or Comenity Capital Bank accounts via calls to cell phones, text messages or telephone calls, including the use of artificial or pre-recorded message calls, as well as calls made via automatic telephone dialing systems or via email.[2]

49. Comenity uses, and has used, an Ayava Proactive Contact 5.1 system to place calls.

50. Comenity's Avaya's dialing system is a predictive dialer.

51. Upon information and good faith belief, Comenity utilized a predictive dialer to place outbound calls to Plaintiffs' cellular telephone numbers.

52. A predictive dialer is a type of ATDS that has the capacity to store numbers to be called, and to dial such numbers automatically (even if the system must be turned on or triggered by a person). *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *see also Pederson v. Donald J. Trump for President, Inc.*, --- F. Supp. 3d ----, 2020 WL 3047779, at *5 (D. Minn. June 8, 2020) ("The Eighth Circuit has not yet weighed in on this issue, and the Court finds the logic of the Second and Ninth Circuits to be more persuasive. Under the Trump Campaign's theory (and Eleventh Circuit precedent), software that could dial a number at random from a

---

[1] https://d.comenity.net/potterybarn/pub/apply/ApplyIntro.xhtml?isx=0.0 (last visited Aug. 25, 2020).

[2] https://d.comenity.net/potterybarn/pub/apply/ApplyIntro.xhtml?isx=0.0 (last visited Aug. 25, 2020).

phonebook (imagining that there were still such things as phonebooks) would not constitute an autodialer, because a phonebook is nothing more than a list of numbers compiled by humans. The Court sees no reason why software must generate numbers itself, and will not read such a limitation into the text of the statute.").

53. Upon answering a number of Comenity's calls, Ms. Hancock would have to say hello more than once, and heard a blip, before being transferred to one of Comenity's representatives.

54. Upon information and good faith belief, and in light of the frequency, character, number, and nature of the calls, Comenity used an ATDS, as defined by 47 U.S.C. § 227(a)(1), to place its calls to Plaintiffs' cellular telephone numbers.

55. Upon information and good faith belief, Comenity uploads telephone numbers to be called to its dialer, which stores the numbers to be called and automatically dials the numbers based on the availability of Comenity's customer service representatives to field connected calls.

56. Upon information and good faith belief, Comenity used such hardware and software to place the calls at issue to Plaintiffs' cellular telephone numbers.

57. Upon information and good faith belief, Comenity placed its calls to Plaintiffs' cellular telephone numbers for non-emergency purposes.

58. Indeed, Comenity's calls to Plaintiffs' cellular telephone numbers were in an apparent effort to reach Comenity's customers about their accounts.

59. Upon information and good faith belief, Comenity placed its calls to Plaintiffs' cellular telephone numbers voluntarily.

60. Upon information and good faith belief, Comenity placed its calls to Plaintiffs' cellular telephone numbers under its own free will.

61. Upon information and good faith belief, Comenity had knowledge that it was using an ATDS to place its calls to Plaintiffs' cellular telephone numbers.

7

62. Upon information and good faith belief, Comenity, as a matter of pattern and practice, uses an ATDS to place calls, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

**Class Action Allegations**

63. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of themselves and a class of similarly situated individuals as defined below:

> All persons and entities throughout the United States (1) to whom Comenity Bank placed, or caused to be placed, at least one call (2) directed to a number assigned to a cellular telephone service, by (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the filing date of the complaint through and including the date of class certification, (5) where the called party was not a Comenity Bank accountholder.

Excluded from the class are Comenity, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Comenity has or had a controlling interest.

64. The proposed class is so numerous that, upon information and belief, joinder of all members is impracticable.

65. The exact number of members of the class is unknown to Plaintiffs at this time and can only be determined through appropriate discovery.

66. The proposed class is ascertainable because it is defined by reference to objective criteria.

67. In addition, and upon information and belief, the cellular telephone numbers of all members of the class can be identified in business records maintained by Comenity and third parties.

68. Plaintiffs' claims are typical of the claims of the members of the class because all of the class members' claims originate from the same conduct, practice and procedure on the part of

8

Comenity, and Plaintiffs possess the same interests and have suffered the same injuries as each class member.

69. Like all members of the proposed class, Plaintiffs received telephone calls from Comenity using an ATDS, without their consent, in violation of 47 U.S.C. § 227.

70. Plaintiffs will fairly and adequately protect the interests of the members of the class and have retained counsel experienced and competent in class action litigation.

71. Plaintiffs have no interests that are contrary to or in conflict with the members of the class they seek to represent.

72. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

73. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

74. There will be little difficulty in the management of this action as a class action.

75. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Comenity has acted on grounds generally applicable to the class.

76. Among the issues of law and fact common to the class are:

   a. Comenity's violations of the TCPA as alleged in this class action complaint;

   b. Comenity's use of an ATDS as defined by the TCPA;

   c. Comenity's practice of placing calls to wrong or reassigned cellular telephone numbers;

   d. Comenity's practice of continuing to call consumers after being informed it placed calls to the wrong number or wrong person; and

9

  e. the availability of statutory damages.

77. Absent a class action, Comenity's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

### Count I: Violations of 47 U.S.C. § 227(b)(1)(A)(iii)

78. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-77.

79. Comenity violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an ATDS to place telephone calls to Plaintiffs' cellular telephone numbers, without their consent.

80. As a result of Comenity's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs and the class are entitled to damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action and designating Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b) Adjudging that Comenity violated 47 U.S.C. § 227(b)(1)(A)(iii), and enjoining Comenity from continuing to place calls to Plaintiffs' cellular telephone numbers, from placing calls to consumers' cellular telephone numbers by using an ATDS or an artificial or prerecorded voice without the prior express consent of the consumers, and from committing further violations of 47 U.S.C. § 227(b)(1)(A)(iii);

(c) Awarding Plaintiffs and members of the class statutory damages pursuant to 47 U.S.C. § 227(b)(3) in an amount up to $1,500.00 per violation;

(d) Awarding Plaintiffs and members of the class their reasonable costs, expenses, and attorneys' fees incurred in this action, including expert fees, pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

(e) Awarding other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: August 31, 2020	*/s/ Anthony LaCroix*
Anthony LaCroix
LaCROIX LAW FIRM, LLC
1600 Genessee, Suite 956
Kansas City, MO  64102
(816) 399-4380
Tony@lacroixlawkc.com

Michael L. Greenwald*
GREENWALD DAVIDSON RADBIL PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
(561) 826-5477
mgreenwald@gdrlawfirm.com

* To seek admission *pro hac vice*

Counsel for Plaintiffs and the proposed class